**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00009-HBB**

DANNY WIGGINS                                                                   PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                     DEFENDANT

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Danny Wiggins ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 14) and Defendant (DN 17) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).   By Order entered June 16, 2020 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

1

FINDINGS OF FACT

On June 20, 2008, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 16, 89).   Following a hearing, Administrative Law Judge Marci P. Eaton ("ALJ Eaton") issued a decision on September 23, 2010, denying the applications at the fifth step in the sequential evaluation process (Tr. 89-100).   The Appeals Council denied Plaintiff's request for review of the hearing decision (Tr. 16).   As a result, ALJ Eaton's decision became the final decision of the final decision of the Commissioner (Id.).

On March 25, 2016, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 16, 272-74, 275-82).   On February 3, 2016, Plaintiff filed an application for Supplemental Security Income (Tr. 16).[1]   Plaintiff alleged that he became disabled on November 1, 2014, as a result of chronic neck and back pain, depression, social anxiety and nervousness, learning/comprehension disability, chronic ear disease-3 tympanomastoidectomies, hypertension, leg spasm/pain, and hepatitis C (Tr. 16, 296).   Administrative Law Judge David Peeples ("ALJ Peeples") conducted a video hearing from Paducah, Kentucky (Tr. 16, 43).   Plaintiff and his counsel, Sarah J. Martin Diaz, participated from Madisonville, Kentucky (Id.).[2]   Teresa Wolford, an impartial vocational expert, testified during the hearing (Id.).

---

1  A copy of Plaintiff's application for Supplemental Security Income is not included in the administrative record.

2  The transcript of the administrative hearing includes an opening statement by ALJ Peeples which, in pertinent part, reads "I'm conducting a video hearing from the Social Security Administration Office of Hearings Operations in Paducah, Kentucky.   Mr. Wiggins is present in the Social Security Office, in Madisonville, Kentucky, and he has his representative, Ms. Sarah Martin." (Tr. 43).   Additionally, the decision specifies ALJ Peeples presided over the video hearing from Paducah, Kentucky, and Plaintiff appeared in Madisonville, Kentucky (Tr. 16).   By contrast, in an introductory paragraph that is not part of the hearing transcript, the hearing reporter indicates Plaintiff appeared in person for the administrative hearing on May 24, 2018, in Paducah, Kentucky (Tr. 43).   After considering the circumstances, the Court concludes the aforementioned introductory paragraph contains a typographical error.

2

In a decision dated November 26, 2018, ALJ Peeples evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 16-33).   ALJ Peeples recognized that he "must apply the principles set forth in Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6), which directs an Administrative Law Judge is bound by the findings of a previous Administrative Law Judge regarding the claimant's residual functional capacity or other findings required under the applicable sequential evaluation process for determining disability unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding" (Tr. 17).   Additionally, ALJ Peeples found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016 (Tr. 19).

At the first step, ALJ Peeples found Plaintiff has not engaged in substantial gainful activity since November 1, 2014, the alleged onset date (Id. Finding No. 2).   At the second step, ALJ Peeples determined that Plaintiff has the following severe impairments: degenerative disc disease; degenerative joint disease of the right knee and history of arthroscopic debridement of the left knee; hepatitis C and stage 3 fibrosis of the liver with elevated liver enzymes; history of chronic ear infections, status post three tympanomastoidectomies; chronic obstructive pulmonary disease (COPD); and learning/comprehension disability (Id. Finding No. 3).   ALJ Peeples also determined that Plaintiff's hypertension; benign prostatic hypertrophy; sleep apnea; gastroesophageal reflux disease (GERD); depression; and anxiety are "non-severe" impairments within the meaning of the regulations (Tr. 20-22).   Further, ALJ Peeples found there is no evidence of a medically determinable impairment regarding muscle spasms or neuropathy (Tr. 20).

3

At the third step, ALJ Peeples concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 22, Finding No. 4).

At the fourth step, ALJ Peeples found that Plaintiff has the residual functional capacity (RFC) to perform a range of light work[3] because: he is limited to occasionally climbing ramps and stairs, but never ladders, ropes or scaffolds; he is limited to occasionally balancing, stooping, kneeling, crouching and crawling; he should avoid concentrated exposure to noise; he needs to work in a moderately quiet environment and would not be able to perform work that requires good hearing as a primary part of work tasks; he should avoid concentrated exposure to moving mechanical parts, unprotected heights, vibration, dust, odors, fumes, and other pulmonary irritants; and he is limited to completing simple tasks and instructions (Tr. 24, Finding No. 5).   ALJ Peeples relied on testimony from the vocational expert to find that Plaintiff is unable to perform any of his past relevant work (Tr. 31).

ALJ Peeples proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 31-32). ALJ Peeples found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id., Finding No. 10).   Therefore, ALJ Peeples concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from November 1, 2014 through the date of the decision (Tr. 32 Finding No. 11).

---

3 Consistent with an RFC to perform light work, the ALJ indicated that Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; and push and/or pull consistent with his lifting and/or carrying limitations (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review ALJ Peeples's decision (Tr. 270-71).   The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." <u>Cohen v. Sec'y of Health & Human Servs.</u>, 964 F.2d 524, 528 (6th Cir. 1992) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of ALJ Peeples's decision (Tr. 1-4).   At that point, ALJ Peeples's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing ALJ Peeples's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d 146, 148 (6th Cir. 1996); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695-696 (6th Cir. 1993).

5

## The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, ALJ Peeples denied Plaintiff's claim at the fifth step.

Assessment of Mental Limitations in Finding Nos. 3, 4, and 5

1.  Arguments of the Parties

Plaintiff claims "[t]here was clear error in the ALJ's analysis of [his] mental impairments" (DN 14-1 PageID # 1157-60).  Essentially, Plaintiff contends ALJ Peeples should have given "great weight," instead of "little weight," to the opinion of Jodi Bauer, MP, LPP, who performed a consultative psychological examination on June 6, 2016 (Id.).  To show prejudice arising from the ALJ's "clear error," Plaintiff asserts the severity of the limitations in Ms. Bauer's opinion demonstrate his mental impairments satisfy the "paragraph B criteria" for Listings 12.04 and 12.06, and the requirements of paragraph B for Listing 12.05 (Id.).[4]  Plaintiff asserts "[e]ven if a listing is not found to have been met, the RFC should have been found to have been further eroded to a degree that would be completely work preclusive" (Id.).  In support of his assertion, Plaintiff cites the vocational expert's testimony indicating the hypothetical individual would not be able to maintain competitive level employment if he has an inability to complete even simple tasks under time constraints (Id. PageID # 1159, citing Tr. 82).

_____

4 Plaintiff contends the paragraph B requirements of Listing 12.05 are met because he received a full-scale IQ test score of 67, "which is well under the 70 as required in 12.05(B)(1)(b) to demonstrate subaverage intellectual functioning" (DN 14-1 PageID # 1158, citing Tr. 424).   Plaintiff contends the ALJ's failure to even acknowledge or assess his qualifications under Listing 12.05 is "clear error and this alone is reason for a remand" (DN 14-1 PageID # 1158).

7

Defendant argues substantial evidence supports the "little weight" the ALJ gave to Ms. Bauer's opinion (DN 17 PageID # 1174-85).   Further, Defendant points out the record is devoid of a medical opinion indicating Plaintiff's mental impairments meet or medically equal Listings 12.04, 12.05, and 12.06 (Id.).[5]   Defendant asserts that part of Plaintiff's claim is waived because he made no effort to develop an argument supporting his assertion that that he meets Listings 12.04, 12.05, and 12.06 (Id.).

  2.   Discussion

Although not expressly stated, Plaintiff is challenging Finding Nos. 3, 4, and 5 which, respectively, set forth ALJ Peeples's determinations about Plaintiff's mental impairments at the second, third, and fourth steps in the sequential evaluation process.   At the second step, ALJ Peeples found Plaintiff's learning/comprehension disability is a severe impairment (Tr. 19, Finding No. 3), but Plaintiff's anxiety and depression are nonsevere medically determinable impairments (Tr. 21-22).   At the third step, ALJ Peeples specifically concluded the severity of Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listing 12.11 which addresses neurodevelopmental disorders (Tr. 22-23).   20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.11.   At the fourth step, ALJ Peeples's mental RFC assessment indicated Plaintiff "is limited to completing simple tasks and instructions" (Tr. 24, Finding No. 5; Tr. 31).

_____

5 Defendant notes that the agency psychologists, Ilze Sillers Ph.D. and Edward Stodola, Ph.D., reviewed the record, which included Ms. Bauer's opinion, and concluded that Plaintiff's impairments did not meet or medically equal any mental health listing, including Listings 12.02, 12.04, and 12.06 (DN 17 PageID # 1174-85, citing Tr. 110-111, 148-149).

The Court will begin with Plaintiff's use of the "clear error" standard in his argument (*see* DN 14-1 PageID # 1157-60).   The "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed.   *See* Fed. R. Civ. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); Mitchum v. Saul, No. 2:19-CV-02533-JPM-dkv, 2020 WL 1493482, at *1 (W.D. Tenn. March 27, 2020); Samona v. Comm'r of Soc. Sec., No. 15-CV-11713, 2018 WL 2159893, at *1 (E.D. Mich. May 10, 2018).   The "clear error" standard also applies when a party moves a district court to alter or amend its judgment under Fed. R. Civ. P. 59(e). *See* Moore v Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018).   Neither situation exists here.   Instead, Plaintiff is utilizing the "clear error" standard in his challenge of the final decision of the Commissioner (DN 1).   But the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).   Thus, the Court declines Plaintiff's invitation to apply the "clear error" standard.

Next, it is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."   United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec.,

9

2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion).   Contrary to Defendant's assertion,

Plaintiff has provided a developed argument regarding the issue of whether his mental impairments

meet Listing 12.04 *Depressive, bipolar and related disorders*; Listing 12.05 *Intellectual Disorder*;

and Listing 12.06 *Anxiety and Obsessive-Compulsive Disorder*.   Therefore, the Court will address

the merits of these issues.

The crux of Plaintiff's claim is that ALJ Peeples should have assigned "great weight" to

the opinion of Jodi Bauer, MA, LPP (Licensed Psychological Practitioner).   As Plaintiff filed his

applications prior to March 27, 2017, the rules in 20 C.F.R. §§ 404.1527 and 416.927 apply to the

ALJ's assignment of weight to the medical opinions in the record.   Notably, under the regulations,

Ms. Bauer is not designated an "acceptable medical source."   *See* 20 C.F.R §§ 404.1502(a)(1)-(8)

and 416.902(a)(1)-(8) (list of "acceptable medical sources").   However, the regulations direct that

an opinion from a "medical source" such as Ms. Bauer, who is not "acceptable medical source,"

will be considered "using the same factors as listed paragraphs (c)(1) through (c)(6) in this section"

and an Administrative Law Judge should explain the weight given to the opinion.   20 C.F.R. §§

404.1527(f)(1)-(2), 416.927(f)(1)-(2).   This means the ALJ must weigh Ms. Bauer's opinion

based on factors such as the examining relationship, specialization, consistency, and

supportability.   *See* Gayheart, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)).

Ms. Bauer conducted a consultative psychological examination on June 6, 2016 (Tr. 537-

41).   ALJ Peeples provided a thorough and accurate summary of the report prepared by Ms. Bauer

(*compare* Tr. 21 *and* 537-40).   In the report, Ms. Bauer expressed the following diagnostic

impression: major depressive disorder, recurrent, moderate to severe without psychotic features;

10

generalized anxiety disorder; and rule out below average intellectual functioning (Tr. 540).   She

also articulated the following opinion regarding Plaintiff's mental functional capacities:

> 1. MR. WIGGINS's capacity to understand, retain, and follow instructions towards the performance of simple, repetitive tasks appears affected by his symptoms of depression and anxiety to a **moderate degree**.
> 2. His ability to sustain attention and concentration towards the completion of tasks under time constraints appears affected by this impairment to a **moderate to marked degree**.
> 3. His ability to tolerate stress and the pressure of day to day employment appears affected by this impairment to a **marked degree**.
> 4. His capacity to respond appropriately to supervisors, co-workers, and the general public in a work setting appears to be affected by this impairment to a **moderate degree**.

(Tr. 541) (emphasis added).   ALJ Peeples afforded "little weight" to Ms. Bauer's opinion because

it appeared to be an overstatement of the degree of impairment (Tr. 30).   The ALJ explained that

Ms. Bauer's opinion was inconsistent with Plaintiff's own description of his daily activities (Id.).

ALJ Peeples pointed out that Plaintiff "reported he can do light chores, including riding a mower,

doing laundry and dishes, caring for his dog, taking care of many of his personal needs, preparing

his own meals, driving a car and going out alone, and shopping in stores" (Id.).   He concluded

these activities suggest Plaintiff can pay attention and concentrate better than Ms. Bauer had

opined (Id.).   In sum, ALJ Peeples explained why Ms. Bauer's opinions were inconsistent with

Plaintiff's activities of daily living and were not supported by her own observations during the

consultative examination.   20 C.F.R. §§ 404.1527(f)(3) and (4), 416.927(f)(3) and (4).

Consistent with the foregoing explanation, the ALJ's determination to award "little weight" to the

opinions of Ms. Bauer is supported by substantial evidence and comports with applicable law.

Therefore, this part of Plaintiff's claim fails.

Next, Plaintiff challenges ALJ Peeples's finding that his anxiety and depression are not "severe" impairments.   At the second step in the sequential evaluation process a claimant must demonstrate he suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).   To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his physical or mental ability to do "basic work activities."   20 C.F.R. §§ 404.1522(a), 416.922(a).

The determination whether a mental condition is "severe" is based upon the degree of functional limitation in the four broad functional areas known as the "paragraph B criteria."   20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E.   They are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."   20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The four areas of mental functioning are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme."   20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).   If the four areas of mental functioning are rated as "none" or "mild," the Administrative Law Judge will generally conclude that the claimant's impairment is not "severe," unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.   20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).   The limitations identified in the "paragraph B criteria" is also used to rate the severity of mental impairments at step 3 of the sequential evaluation process.

In the earlier final decision of the Commissioner, ALJ Eaton acknowledged while the medical evidence established Plaintiff's depression and anxiety are medically determinable impairments the record failed to demonstrate these conditions have more than minimally affected Plaintiff's ability to work (Tr. 92).   ALJ Eaton also observed "[i]n any event, it appears any issues the claimant has with depression or anxiety are adequately controlled with medication.   Based on the evidence of record, depression and anxiety could, at best, be considered to be no more than non-severe impairments in this matter." (Id.).   Basically, ALJ Eaton found the degree of limitation caused by these mental impairments was "none" or "mild" in the four broad areas of mental functioning known as the "paragraph B criteria."   *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

ALJ Peeples recognized that under the principles set forth in Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6) he was bound by the prior findings of ALJ Eaton unless there is new and material evidence showing a change in the severity of these mental impairments (Tr. 17, 21-22).   ALJ Peeples analysis regarding Plaintiff's anxiety and depression reads:

> When [the claimant] filed his current application, he continued to complain of depression and anxiety.   At the reconsideration level, he reported his symptoms had worsened (Exhibit B7E).   At the hearing, he testified that he was a very nervous person.   He stated that his inability to work and provide for the household has caused depression.   He stated that he does not like talking to people.
>
> While he has complained of depression and anxiety, there is no evidence that his symptoms have significantly changed since the issuance of the prior hearing decision.   Treatment notes from his primary care provider around the time of his alleged onset date indicate a "mild depressed affect."   While he has appeared mildly depressed at times, at most visits he has exhibited normal mood and

13

affect. His depression and anxiety appeared to be under control with medication prescribed by his primary care provider (Exhibit B11F). He was referred for a consultative psychological examination in June 2016 with *Jodi Bauer*, M.A., LPP. He complained of increased depression and anxiety in the past couple of years. However, he reported his only treatment has been medication prescribed by his primary care provider. He complained of excess worry, poor energy, problems with concentration and memory, panic attacks, easily overwhelmed, frequent stomach and head aches, irritability/easily agitated, feelings of sadness, social withdrawal, crying episodes, pain reactivity, sleep problems, limited appetite, decreased pleasure in activities, decreased sex drive, fidgety/motor restlessness, biting fingernails, and feelings of hopelessness/worthlessness. However, he *denied having suicidal ideations or intent*. Mental status findings revealed his attention to task was normal, but concentration was scattered. He had deficits in immediate recall and working memory. His mood appeared anxious, but his attitude was cooperative. His thought content appeared appropriate to mood and circumstances. He denied any history of hallucinations. The organization of his thought processes appeared logical. His fund of knowledge appeared to be below average. However, his abstraction was intact and his judgment and reality testing appeared adequate. Insight into the nature of his difficulties appeared fair. His decision-making abilities appeared simplistic. His coping abilities appeared generally limited and easily overwhelmed. Based on the findings, he was assessed with major depressive disorder, generalized anxiety disorder, and rule out below average intellectual functioning. His global assessment of functioning (GAF) was 49. While this is a rather low GAF score, the undersigned notes that a GAF score is only a snapshot opinion about a person's level of functioning. Unless the clinician clearly explains the reasons behind the GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis (Exhibit B6F).

Treatment notes from February 2017 reveal complaints of increased anxiety. Despite his complaints, he exhibited a normal mood and affect (Exhibit B11F). In February 2017, he sought treatment at Pennyroyal Regional Mental Health. He complained of depression and anxiety, but *denied any suicidal or homicidal ideations*, hallucinations, paranoia or delusions. He reported he avoided

14

people most of his life.  His speech was clear and coherent.  His dress and hygiene were neat.  He was assessed with major depressive disorder and generalized anxiety disorder.  His mental health treatment has been rather minimal.  At a therapy session in June 2017, he exhibited some paranoid thoughts.  However, at his therapy visit in August 2017, mental status findings were normal.  He presented with appropriate affect and neutral mood.  After his visit in August 2017, the next evidence of treatment is not until January 2018.  At this time, he complained of worsening symptoms due to a change in medication.  He reported his primary care provider discontinued his Xanax.  At a visit in February 2018, mental status examination revealed a flat affect and depressed/irritable mood.  However, he *continued to deny any suicidal/homicidal ideations*, hallucinations, paranoia or delusions.  His speech was clear and coherent, following linear thought pattern.  He was referred for a medical evaluation for medication management (Exhibit B17F).

While he continues to complain of depression and anxiety, the evidence fails to reveal an improvement or worsening in these conditions since the issuance of the prior hearing decision.  Accordingly, they remain nonsevere impairments.  However the evidence does indicate some moderate limitations due to his learning/comprehension difficulties, which will be discussed below.

(Tr. 21-22) (emphasis added).  Essentially, ALJ Peeples concluded the new evidence failed to show a change in the severity of Plaintiff's anxiety and depression.  For this reason, ALJ Peeples did not disturb ALJ Eaton's implicit determination that the degree of limitation caused by these mental impairments was "none" or "mild" in the four broad areas of mental functioning known as the "paragraph B criteria."  *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  A thorough review of the record reveals that the findings are supported by substantial evidence in the record and comport with applicable law.  Therefore, Plaintiff's challenge to ALJ Peeples's step 2 findings are without merit.

Moving to the third step, a claimant will be found disabled if his impairment meets or medically equals one of the listings in the Listing of Impairments.   20 C.F.R. § 404.1520(a)(4)(iii); <u>Turner v. Comm'r of Soc. Sec.</u>, 381 F. Appx. 488, 491 (6th Cir. 2010).   The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 404.1525(a).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."   20 C.F.R. § 404.1525(c)(3).   A claimant must satisfy all the criteria to "meet" the listing and be deemed disabled.   *See* 20 C.F.R. § 404.1525(c)(3) and (d); <u>Hale v. Sec'y of Health & Human Servs.</u>, 816 F.2d 1078, 1083 (6th Cir. 1984).   However, a claimant is also deemed disabled if his impairment is the medical equivalent of a listing.   20 C.F.R. § 404.1520(a)(4)(iii); <u>Turner</u>, 381 F. Appx. at 491.   Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. § 404.1526(a).   "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."   <u>Reynolds v. Comm'r Soc. Sec.</u>, 424 F. Appx 411, 415 (6th Cir. 2011).   Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing.   *See* 20 C.F.R. § 404.1526(c) and (d); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); <u>Deters v. Sec'y of Health, Educ. & Welfare</u>, 789 F.2d 1181, 1186 (5th Cir. 1986).

Listing 12.04 *Depressive, bipolar and relate disorders* (see 12.00B3) and Listing 12.06 *Anxiety and obsessive-compulsive disorders* (see 12.00B5) have three paragraphs, designated A, B, and C.   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00A2.   A claimant's mental disorder must satisfy the requirements of paragraphs A and B or paragraphs A and C.   Id.   To satisfy the "paragraph B criteria" of Listings 12.04 and 12.06, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four areas of mental functioning mentioned above.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00A2b and 12.00F2.   Plaintiff relies on Ms. Bauer's opinions, discussed above, to argue it was "clear error" for ALJ Peeples to find the "paragraph B criteria" for Listings 12.04 and 12.05 were not met (DN 14-1 PageID # 1158).   But, as explained above, the ALJ decision to assign "little weight" to those opinions is supported by substantial evidence in the record and comports with applicable law.   Thus, there is no merit to this part of Plaintiff's challenge to the step three findings of ALJ Peeples.

Listing 12.05 *Intellectual disorder* (see 12.00B4) has only two paragraphs, designated A and B.   Id.   A claimant's mental disorder must satisfy the requirements of paragraph A or paragraph B.   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00A2.   In contrast to the other mental disorder listings, paragraph B in Listing 12.05 has three distinct requirements:

> B.      Satisfied by 1, 2, and 3 (see 12.00H):
> 1.      Significantly subaverage general intellectual functioning evidenced by a or b;" the IQ scores in subparts a or b:
>> a.   A full-scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>> b.   A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

> 2.     Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following four areas of mental functioning:
>
> > a.  Understand, remember, or apply information (see 12.00E1); or
> > b.  Interact with others (see 12.00E2); or
> > c.  Concentrate, persist, or maintain pace (12.00E3); or
> > d.  Adapt or manage oneself (see 12.00E4); and
>
> 3.     The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05B.

Regarding the first requirement, Plaintiff points out he received a full-scale IQ test score of 67, "which is well under the 70 as required in 12.05(B)(1)(b) to demonstrate subaverage intellectual functioning" (DN 14-1 PageID # 1158, citing Tr. 424).   The Court agrees this full-scale IQ test score satisfies the first requirement.

Plaintiff argues the second requirement is satisfied because Ms. Bauer opined that his mental impairments result in a "marked" limitation of two areas of mental functioning (Id. PageID # 1158-59).   As discussed above, ALJ Peeples's assignment of "little weight" to Ms. Bauer's opinion is supported by substantial evidence in the record and comports with applicable law. Thus, Plaintiff's reliance on Ms. Bauer's opinion is fruitless in attempting to show he satisfies the "paragraph B2 criteria" in Listing 12.05.   Additionally, the "paragraph B2 criteria" in Listing 12.05 and the "paragraph B criteria" in Listing 12.11 utilize the same four areas of mental functioning and are both satisfied if the mental disorder(s) results in an extreme limitation in one or a marked limitation in two of the four areas of mental functioning.   *Compare* Listing 12.05 *and* Listing 12.11.   Notably, in the context of addressing whether Plaintiff met or medically equaled

Listing 12.11 *Neurodevelopmental disorders*, ALJ Peeples explicitly considered the severity of Plaintiff's learning/comprehension disability, depression, and anxiety in combination to determine if Plaintiff had an extreme limitation in one or a marked limitation in two of the four areas of mental functioning (Tr. 22-23). Specifically, ALJ Peeples made the following findings:

> *In understanding, remembering, or applying information, the claimant has a moderate limitation.* He reported difficulty with memory, understanding and following instructions (Exhibits B5E & B9E). At the consultative examination, he had no difficulty recalling recent and remote personal history, but had deficits in immediate recall. His fund of knowledge appeared to be below average. His decision making abilities appeared simplistic. However, his abstraction was intact and his judgment and reality testing was adequate. In addition, insight into the nature of his difficulties appeared fair (Exhibit B6F). Mental health treatment notes indicate fair memory and good judgment, but limited insight (Exhibit B17F). Due to his learning/comprehension difficulties, it is reasonable that he would have limitations in this area. However, there is nothing suggesting any marked or extreme limitations.

> *In interacting with others, the claimant has a mild limitation.* He reported difficulty getting along with others. He stated that he prefers to be by himself (Exhibits B5E & B9E). At the consultative examination, his eye contact was fleeting, but his speech flow was normal. His attitude was cooperative (Exhibit B6F). Mental health treatment notes indicate problems with social withdrawal (Exhibit B17F). However, there is no evidence of difficulty getting along with treating sources. He has been described as cooperative (Exhibit B9F). While he may have some limitations, the minimal evidence fails to reveal more than mild limitations.

> *With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation.* He complained of problems with concentration and completing tasks (Exhibits B5E & B9E). At the consultative examination, his attention to task was normal, but his concentration was scattered. He had deficits with his working memory (Exhibit B6F). Overall, the record reveals moderate limitations in this area.

> *As for adapting or managing oneself, the claimant has experienced a mild limitation.*  He complained of difficulty handling stress and changes in routine (Exhibits B5E & B9E).  At the consultative examination, his coping abilities appeared limited (Exhibit B6F).  Treatment notes from his primary care provider indicate he was mildly depressed on a few occasions, but generally exhibited a normal mood and affect (Exhibit B11F).  Treatment notes from other sources indicate calm mood and appropriate affect (Exhibit B2OF).  There is no evidence of any deficits in his grooming.  While he may have some limitations in this area, there is nothing indicating more than mild limitations.

(Tr. 22-23).  In sum, ALJ Peeples considered the severity of Plaintiff's learning/comprehension disability, depression, and anxiety in combination and determined that Plaintiff failed to satisfy the "paragraph B criteria" in Listing 12.11, because he did not have an extreme limitation in one or marked limitation in two of the four areas of mental functioning.  This determination, which is supported by substantial evidence in the record and comports with applicable law, hopelessly undermines Plaintiff's assertion that he satisfies the "paragraph B2 criteria" in Listing 12.05.

Moreover, Plaintiff has made no effort to satisfy the third requirement in Paragraph B.  Nor is it likely that he can satisfy this requirement.   As ALJ Eaton aptly pointed out in the earlier decision, Plaintiff's work history simply does not substantiate that he functions at a mild mental retardation level (Tr. 95).  Moreover, Plaintiff's work history would undermine an attempt to demonstrate the disorder began prior to his attainment of age 22.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05B3.   Thus, there is no merit to this part of Plaintiff's challenge to the step three findings of ALJ Peeples.  For the above reasons, there is no merit Plaintiff's challenge to ALJ Peeples's step three findings.

Plaintiff's challenge to ALJ Peeples's mental RFC finding at step four is equally unavailing.   As discussed above, the ALJ's assignment of "little weight" to Ms. Bauer's opinion

20

is supported by substantial evidence in the record and comports with applicable law.   Moreover, his mental RFC finding—Plaintiff is limited to completing simple tasks and instructions—is supported by substantial evidence in the record and comports with applicable law (Tr. 24-26, 28-29, 30-31).   Thus, there is no merit Plaintiff's challenge to ALJ Peeples's step four findings.

Assessment of Physical Limitations in Finding No. 5

1.   Arguments of the Parties

Plaintiff argues substantial evidence does not support the ALJ's finding that Plaintiff has the physical RFC to perform a range of light work (DN 14-1 PageID # 1160-63).   Additionally, and relatedly, Plaintiff argues substantial evidence does not support the ALJ's failure to give "great weight" to the opinion of his treating physician, Dr. Craig Admundson (Id. PageID # 1163-65, citing Tr. 30 (assigned "little weight"), 888-89).   Plaintiff relies on Dr. Admundson's opinion, a physical therapy evaluation, treatment notes from an orthopedic surgeon, and his own hearing testimony to assert that substantial evidence in the record shows he is not capable of being on his feet for up to six hours in an eight-hour workday, he would frequently miss work or leave work early due to his symptoms, and he needs a total knee replacement due to end-stage arthritis (Id. PageID # 1160-65, citing Tr. 64-65, 69, 465-94, 501-04, 509-12, 612, 620, 888, 1044, 1061). Plaintiff contends this substantial evidence in the record demonstrates his physical RFC is limited to less than sedentary work (Id. PageID # 1160-65).   Additionally, Plaintiff asserts the jobs cited by the vocational expert lack the flexibility regarding breaks and changing positions between sitting and standing that he would require (Id.).   Further, the physical RFC finding does not adequately address Plaintiff's hearing loss (Id.).

21

Defendant contends substantial evidence supports the weight ALJ Peeples gave to the medical opinion of Dr. Admundson and the physical RFC finding (DN 17 PageID # 1185-96). Part of Dr. Admundson's opinion indicates Plaintiff is disabled and unemployable, an issue reserved for the Commissioner (Id.). Additionally, the opinion does not provide specific limitations and speculates as to whether Plaintiff will be reliable and consistent in showing up for work (Id.). Also, the limitations in the opinion were not consistent with evidence in the record and not substantiated physical examination results in the doctor's own treatment notes (Id.). Furthermore, other medical opinions in the record provide substantial evidence to support the ALJ's physical RFC finding (Id.).

    2.  Discussion

The RFC finding is an ALJ's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC). An ALJ makes this finding based on a consideration of medical opinions and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a), 416.946(c). Medical opinions expressing functional limitations imposed by a claimant's physical or mental impairments can be generated by treating physicians or psychologists, consultative examining physicians or psychologists, state agency physicians or psychologists who reviewed the claimant's medical records, or medical experts who testify at hearings before an Administrative Law Judge. 20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1513a(b), 404.1527, 404.1545(a)(3), 416.902, 416.913(a)(2), 416.913a(b), 416.927, 416.945(a)(3). Thus, in making the residual functional

capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1527(c), 404.1529(a), 416.927(c), 416.929(a).

The core of Plaintiff's challenge to the physical RFC finding is the ALJ's purported failure to assign "great weight" to the treating source opinion of Dr. Admundson.   As Plaintiff filed his applications prior to March 27, 2017, the rules in 20 C.F.R. §§ 404.1527 and 416.927 apply to the ALJ's assignment of weight to the medical opinions in the record.   The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source.   20 C.F.R. §§ 404.1527(c); 416.927(c).   A treating-source opinion "must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013).   If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source.   20 C.F.R. §§ 404.1527(c), 416.927(c); Gayheart, 710 F.3d at 376.

ALJ Peeples provided a comprehensive discussion of Dr. Admundson's treatment records which revealed treatment for several conditions, including: hypertension; benign prostatic hypertrophy; gastroesophageal reflux disease (GERD); chronic neck and back pain; cervical radiculopathy and numbness; peripheral vascular disease; respiratory complaints; and neuropathy

(Tr. 20, 26, 27, 28).   But the ALJ noted that Dr. Admundson's diagnosis of cervical radiculopathy was inconsistent with the April 2015 and January 2016 diagnostic images of the cervical spine that were negative (Tr. 26).   The ALJ also noted although Dr. Admundson had assessed Plaintiff with neuropathy in the arms and hands bilaterally the evidence failed to document medically acceptable clinical and laboratory findings establishing neuropathy (Tr. 20).   Further, ALJ Peeples observed that Dr. Wilson's consultative examination in July 2016 revealed normal strength and sensation in Plaintiff's upper and lower extremities bilaterally, treatment notes from other sources indicated Plaintiff's sensation was intact to light touch, and there was an absence of objective testing, such as a nerve conduction study, documenting neuropathy (Tr. 20, 26, citing Tr. 552-57, 558-610, 1039-92).   The ALJ noted that Dr. Amundson's conservative treatment of Plaintiff's complaints of neck and back pain primarily involved prescription pain medication and that Plaintiff failed to follow through with Dr. Amundson's several referrals to pain management (Tr. 27).   The ALJ also noted that Dr. Amundson's examination findings were generally limited to findings of tenderness with no evidence of problems with Plaintiff's range of motion, gait, station, balance, or coordination (Id. citing Tr. 640-783, 895-915, 943-76).   Further, while Dr. Amundson indicated Plaintiff had a history of degenerative disc disease the doctor's records lacked updated imaging of Plaintiff's spine (Id.).   ALJ Peeples indicated there was nothing in Dr. Amundson's treatment records suggesting limitations on Plaintiff's ability to sit, stand and/or walk (Id.).

ALJ Peeples noted that in a letter dated April 17, 2017, Dr. Amundson expressed an opinion regarding Plaintiff's limitations (Tr. 29-30 citing Tr. 888-89).   The ALJ's discussion and assignment of weight to the opinion reads:

[Dr. Amundson] stated that [Plaintiff's] multiple medical conditions were severe and resulted in painful symptoms and limitations on a daily basis, which directly limit his mobility, strength and activities of daily living.   [Dr. Amundson] stated that [Plaintiff's] pain limits his ability to sit, stand or walk for long periods of time.   [Dr. Amundson] opined that during a normal eight-hour work day, even in a sedentary job, [Plaintiff] would likely need to change positions frequently and take multiple breaks to lie down and/or recline to alleviate the pain.   [Dr. Amundson] opined that [Plaintiff] would have "good and bad days in a workplace setting."   [Dr. Amundson] stated that on a bad day [Plaintiff] would likely have to call in sick or leave work early.   [Dr. Amundson] stated that [Plaintiff's] bad days would occur on a regular basis as his conditions are permanent and not fully controlled by his medication management.   [Dr. Amundson] stated that [Plaintiff] was not a candidate for the full-time workforce.   [Dr. Amundson] opined that [Plaintiff] was a cooperative and credible patient with no evidence of malingering (Exhibit B13F).   [Dr. Amundson] *opinion* that [Plaintiff] is ***"not a candidate for the fulltime workforce" is regarding an issue that is reserved for the Commissioner and is afforded no weight***.   [Dr. Amundson's] ***other opinions are afforded little weight***.   While he opines that [Plaintiff] cannot sit, stand or walk for "long periods of time", [Dr. Amundson] ***did not provide any specific limitations***.   Most importantly, his limitations regarding the severity of [Plaintiff's] limitations are ***not consistent with the evidence of record, including his own treatment notes***.   As stated earlier, while Dr. Amundson assessed [Plaintiff] with neuropathy, the evidence fails to document findings consistent with this diagnosis.   Treatment notes from medically acceptable sources fail to reveal abnormal sensation.   There is no testing, such as a nerve conduction study, documenting neuropathy, Dr. Amundson's physical examination findings have been generally limited to tenderness.   Treatment notes from other sources, as well as the consultative examiner, indicate normal strength, sensation, gait, posture, and range of motion.   ***Overall, the evidence simply fails to reveal limitations as severe as Dr. Amundson reported***.

(Tr. 29-30 citing Tr. 888-89 (emphasis added)).   Regarding the ALJ's first reason, he appropriately gave no weight to Dr. Amundson's opinion because it addresses an issue reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d), 416.927(d).   As to Dr. Amundson's "other

25

opinions," although ALJ Peeples could have been more explicit, it is readily apparent that ALJ Peeples concluded the doctor's opinions were not entitled to "controlling weight" because they were inconsistent with other substantial evidence in the record.   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Gayheart, 710 F.3d at 376.   Further, ALJ Peeples provided "good reasons" for assigning "little weight" to Dr. Amundson's other opinions and those "good reasons" are based on factors in paragraphs (c)(1)-(6) in §§ 404.1527 and 416.927; Gayheart, 710 F.3d at 376.   In sum, ALJ Peeples's assignment of weight to Dr. Amundson's opinions are supported by substantial evidence and comport with applicable law.   Further, ALJ Peeples's decision indicates he thoroughly reviewed the evidence of record before concluding Plaintiff could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday and he could sit (with normal breaks) for a total of about six hours in an eight-hour workday (Tr. 20, 24-31).   Moreover, ALJ Peeples clearly articulated the reasons why he concluded that Plaintiff could perform a range of light work with specific postural and environmental limitations to address Plaintiff's physical RFC (Id.).   In sum, the physical RFC finding is supported by substantial evidence in the record and comports with applicable law.   As long as substantial evidence supports the ALJ's decision, the Court must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion.   See Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).

## Finding Nos. 7-10

Next, Plaintiff claims it was clear error for ALJ Peeples not to have issued a GRID ruling in this case with an onset date of his 50th birthday (DN 14-1 PageID # 1165).   Plaintiff argues if ALJ Peeples found he is limited to a sedentary or less RFC, then a GRID ruling would have

26

resulted with an onset date of November 28, 2014, his 50th birthday, and he would have received a favorable decision (Id.). However, Plaintiff's claim and supporting argument are unavailing. As indicated above, substantial evidence in the record supports the ALJ's determination that Plaintiff has the RFC to perform a range of light work. Plaintiff's argument concedes that the GRID Ruling would only be applicable if he were limited to a sedentary or less RFC. In sum, there is no merit to Plaintiff's claim.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

January 11, 2021

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel